## STATE OF FLORIDA v SNOW

Case No. 90-6951-TT

County Court, Bay County

May 22, 1991

### APPEARANCES OF COUNSEL

**Quentin Broxton, Esquire,** Assistant State Attorney, for plaintiff.
**Richard Ogburn, Esquire,** for defendant.

### OPINION OF THE COURT

THOMAS F. WELCH, County Judge.

### *ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS BREATH TEST RESULTS*

The Defendant seeks to suppress the breath test results on three

grounds. First of all, the Defendant contends that the results are inadmissible because the tests were administered approximately one hour and eighteen minutes after the accident in question. Secondly, it is claimed that the results should be suppressed because the officers did not comply with the requirement that the Defendant be observed for at least twenty minutes prior to the tests. Finally, the Defendant contends that the results are inadmissible because they were not obtained as a result of the analysis of two consecutive breath samples. Each of these three issues will be addressed separately.

## I. TIMING OF THE TESTS

As stated above, the Defendant contends that the results should not be admitted because the two breath tests were administered approximately one hour and eighteen minutes after the Defendant's accident. The argument is that the results do not prove the Defendant's blood alcohol level at the time that he was driving. However, a delay of some one hour and twenty minutes in the administration of a breath or blood test has been held to go to the weight of the evidence, rather than to its admissibility. *Haas v State*, 567 So.2d 966 (Fla. 5th DCA 1990); *State v Miller*, 555 So.2d 391 (Fla. 3d DCA 1989).

Therefore, as to this ground, the Defendant's Motion to Suppress is denied.

## II. THE TWENTY-MINUTE OBSERVATION PERIOD

Section 316.1932(1)(b), Florida Statutes (1989) requires the analysis of a person's breath to be performed substantially according to methods approved by the Department of Health and Rehabilitative Services. The Department requires the technician, arresting officer, or person administering the collection of the breath sample to make certain that the Defendant does not take anything by mouth or does not regurgitate for at least twenty minutes before administering the tests. Fla. Admin. Code Rule 10D-42.024(1)(f). However, any insubstantial difference between the approved techniques and the actual testing procedures in any individual case shall not render the test or test results invalid. Section 316.1932(1)(b), Florida Statutes (1989).

The Defendant contends that the breath test results should be suppressed because there was not a substantial compliance with the requirement that the Defendant be observed for at least twenty minutes. Specifically, it is argued that the officers did not keep their eyes continuously trained upon the Defendant for the entire period; therefore, they could not have made certain that the Defendant did not take

**133**

anything by mouth or regurgitate during that time. In support of its argument, the defense submitted into evidence at the hearing on the Motion to Suppress a video tape, which was admitted as Defense Exhibit No. 1.

The video tape reveals that Officer Steve Yates and Deputy Henry Moore were in the same room with the Defendant for approximately twenty-four minutes prior to administration of the breath tests. During this time, the following acts occurred.

Officer Yates read the Implied Consent Rights to the Defendant. While he did so, Officer Yates alternated between looking at the Defendant and reading his Implied Consent form. Deputy Moore than had the Defendant perform certain field sobriety tests. Although Deputy Moore did read the instructions for each test to the Defendant, the Deputy did look at the Defendant at various times during his instructions and his demonstrations of the tests. He also watched the Defendant perform each of the tests. During these instructions, demonstrations, and the Defendant's performance of the tests, Deputy Moore was in close proximity to the Defendant. It should be pointed out here that the required observation period may, in fact, include the performance of field sobriety tests. *Wilson v State*, 25 Fla. Supp. 2d 118 (Fla. 13th Cir. Ct. 1987).

Following the field tests, the Defendant was seated directly at the end of a table, with his back to the wall and with his left side to the end of the table. Deputy Moore took his seat along the side of the table at the same end as the Defendant. Thus, as Deputy Moore sat facing the wall, he was seated practically next to the Defendant. Deputy Moore then asked the Defendant several routine booking questions, during which time the deputy alternated between looking at his forms and at the Defendant.

Following the end of this questioning, both Deputy Moore and Officer Yates spent approximately the next six minutes completing their paper work. During this time, the Defendant remained seated on one side of Deputy Moore, while Officer Yates was on the other side of the deputy. While the officers tended to these matters, they apparently did not directly watch the Defendant.

When his paper work was completed, Deputy Moore then explained in general the breath test procedure to the Defendant. During this explanation and his demonstration of how the Defendant should blow into the mouth piece, Deputy Moore was, in fact, looking at the Defendant. Finally, approximately twenty-four minutes after the officers had begun observing the Defendant, the breath tests were administered.

134

It should be pointed out that Deputy Moore did testify at the hearing. Although he admitted that there were times during the observation period that he did not look at the Defendant, the Deputy did testify that the Defendant did not burp, regurgitate, or take anything by mouth.

This Court finds that the actions of the officers were sufficient to "make certain" that the Defendant did not take anything by mouth or regurgitate for at least twenty minutes before administering the breath tests. For approximately twenty-four minutes, Deputy Moore was in close proximity to the Defendant. Although he admittedly did not keep his eyes trained on the Defendant continuously for the twenty-four minute period, the Deputy did consistently alternate between looking at the Defendant and attending to his other tasks in the Defendant's presence. During the one period of time in which the Deputy completed his paper work without appearing to look directly at the Defendant, the Defendant was seated right next to him at the end of the table.

Because of Deputy Moore's close proximity to the Defendant, this case is distinguishable from that of *State v Martin,* 29 Fla. Supp. 2d 43 (Fla. Volusia Cty. Ct. 1988), in which the officer was sitting at a table attending to paper work approximately twenty feet away from the Defendant, who was seated at a bench. Similarly, this case is not governed by the result in *State v Call,* 20 Fla. Supp. 2d 21 (Fla. Sarasota Cty. Ct. 1985), which concerned a defendant who was seated alone in the back seat of a dark patrol car and was separated from the arresting officer by a Plexiglas window.

Although, as stated above, Fla. Admin. Code Rule 10D-42.024(1)(f) does require the officer to make certain that the defendant does not take anything by mouth or regurgitate during the observation period, the Rule does not specify exactly how the officers are to comply with the requirement. The Defendant would have this Court read into the Rule the requirement that the officers simply stare at the Defendant for at least twenty minutes without performing any other activities; however, this Court will not so interpret the Rule. Again, it is the finding of this Court that the officers' actions were sufficient to comply with the Rule, and there has been no violation.

Even if the officers did fail to comply with the requirements of the Rule in question, the Defendant still would not be entitled to a suppression of the test results. Once a violation of an applicable rule is determined to exist, the next question that must then be addressed is whether the said violation is substantial or insubstantial. Insubstantial

**135**

violations do not invalidate the test results. Section 316.1932(1)(b), Florida Statutes (1989).

In determining whether there has been substantial compliance, the standard to be applied is whether the alleged violation prejudiced the Defendant by raising a legitimate question regarding the authenticity or scientific reliability of the test results. *State v Rinaldi,* 34 Fla. Supp. 2d 122 (Fla. Palm Beach Cty. Ct. 1989). *State v Mathias, 36 Fla. Supp. 2d 129 (Fla. Palm Beach Cty. Ct. 1989). The burden is on the Defendant to demonstrate prejudice; in other words, the Defendant is required to show that the violation affects the reliability of the tests. State v Jessup,* 40 Fla. Supp. 2d 28 (Fla. 15th Cir. Ct. 1989). See also, *Ridgeway v State,* 514 So.2d 418 (Fla. 1st DCA 1987).

As stated in *Rinaldi,* the purpose of the twenty-minute observation period is to make sure that there is no alcohol in the mouth that might cause the Defendant's breath test to indicate a higher reading than his actual blood alcohol level. The Defendant has not presented any evidence to show that the test results were altered or influenced by the presence of any mouth alcohol. There has been no argument that the Intoxilyzer 5000 used in the administration of the Defendant's test detected the presence of any mouth alcohol. In fact, it must be pointed out that the instrument's print out card, which has been introduced as the State's Exhibit No. 1 and also as part of the Defendant's Exhibit No. 2, does not indicate the presence of any mouth alcohol. There has been no argument that the Defendant's first test result was unusually higher than the second test result, which, as indicated in *Rinaldi,* might be the case if mouth alcohol were present.

Consequently, the Defendant has not made any showing of prejudice resulting from the alleged violation. Therefore, even if the officers had failed to comply with the requirements of Fla. Admin. Code Rule 10D-42.024(1)(f), such a violation would be insubstantial and the breath test results would, therefore, be admissible.

### III. THE REQUIREMENT OF TWO CONSECUTIVE BREATH SAMPLES

Fla. Admin. Code Rules 10D-42.0211(4) and 10D-42.022(1) require the analysis of two consecutive deep lung samples of breath. Thus, test results are inadmissible if only one breath sample is obtained. *State v Cobas,* 21 Fla. Supp. 2d 114 (Fla. Dade Cty. Ct. 1985). Similarly, results obtained from the analysis of one deficient sample and one valid sample are inadmissible since, in such event, only one complete breath test has been performed. *State v Giangrande,* 36 Fla. Supp. 2d 67 (Fla. 17th Cir. Ct. 1989).

In this case, the defendant first provided a valid sample which yielded the results of .190%. He then placed his mouth to the mouthpiece two additional times and began to blow. However, he ceased both of these efforts. No test results were obtained with regard to either attempt. In fact, the print out from the Intoxilyzer 5000 indicated nothing with regard to these two attempts. For example, the card, introduced into evidence at the hearing as State's Exhibit No. 1, does not include any such reading as "invalid test" or "deficient sample." Following these two attempts, which produced no print out of information of any kind, the Defendant then provided a second valid sample, which yielded results of .179%.

The Defendant contends that his results should be suppressed because they were obtained from an analysis of his first and fourth samples, rather than from the required two consecutive samples. Whether the Defendant is correct depends upon the characterization of the two attempts which occurred between the two valid samples that were provided. If either of these intervening acts do constitute a breath sample, the Defendant would prevail, as the analyses in question would then, in fact, be the analyses of the first and fourth breath samples. However, if the intervening attempts do not constitute breath samples, the Defendant is not entitled to a suppression, since the two results in question would, in fact, have been obtained from two consecutive samples.

Although the applicable Administrative Rules do not specifically define "samples" or "breath samples," the said Rules, as stated above, do contemplate the analysis of deep lung samples of breath. It has not been shown that the Defendant's actions which took place in between his two valid breath samples resulted in the provision of any deep lung sample of breath. It has not been shown that the Defendant, through these intervening actions, provided any deficient sample or any invalid sample. What has been shown is that the Defendant did provide two consecutive deep lung samples of breath which were analyzed. Whatever his intervening acts may have been, the Court cannot conclude that they constituted any type of intervening sample requiring suppression of the test results. In any event, even if there has been a violation of the applicable rules, the Defendant has not demonstrated any prejudice and, consequently, any violation would be insubstantial. *State v Rinaldi,* 34 Fla. Supp. 2d 122 (Fla. Palm Beach Cty. Ct. 1989); *State v Mathias, 36 Fla. Supp. 2d 129 (Fla. Palm Beach Cty. Ct. 1989); State v Jessup,* 40 Fla. Supp. 2d 28 (Fla. 15th Cir. Ct. 1989); *Ridgeway v State,* 514 So.2d 418 (Fla. 1st DCA 1987).

Consequently, as to this ground, the Defendant's motion shall be denied.

Therefore, it is

**ORDERED AND ADJUDGED** that the Defendant's Motion to Suppress Breath Test Results is denied.

**DONE AND ORDERED** in chambers at Panama City, Bay County, Florida, this 22nd day of May, 1991.